**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

KURASTIN P. BROWN,

         Plaintiff,

v.                                          CIVIL ACTION NO.  2:25-cv-00215

SUPERINTENDENT TOBY ALLEN, et al.,

         Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Plaintiff's First Amended Complaint* (Document 39), the *Motion to Dismiss First Amended Complaint on Behalf of Defendant C.O. Noe* (Document 44), *Defendant C.O. Noe's Memorandum of Law in Support of Her Motion to Dismiss Plaintiff's First Amended Complaint* (Document 45), the *Plaintiff's Response in Opposition to Defendant C.O. Noe's Motion to Dismiss Plaintiff's First Amended Complaint and Memorandum in Support* (Document 48), and *Defendant C.O. Noe's Reply in Support of Her Motion to Dismiss First Amended Complaint* (Document 51).  In addition, the Court has reviewed *Defendant Toby Allen's Motion to Dismiss Plaintiff's Amended Complaint* (Document 46), the *Memorandum of Law in Support of Defendant Toby Allen's Motion to Dismiss Plaintiff's Amended Complaint* (Document 47), the *Plaintiff's Response in Opposition to Defendant Toby Allen's Motion to Dismiss Plaintiff's Amended Complaint and Memorandum in Support* (Document 49), and *Defendant Toby Allen's Reply in Support of Motion to Dismiss Plaintiff's Amended Complaint* (Document 52).  Finally,

the Court has reviewed *Defendant West Virginia Division of Corrections and Rehabilitation's Motion to Dismiss Plaintiff's Amended Complaint* (Document 42), to which no response was filed.

## FACTUAL ALLEGATIONS[1]

The Plaintiff, Kurastin Brown, was held at Southwestern Regional Jail and Correctional Facility (SWRJ) in Logan County, West Virginia, at all relevant times. While housed in the "A Pod," a female housing area, she was raped by a male inmate, S.D.N. The on-duty tower officer, Defendant Noe, allowed S.D.N. to enter the female housing area. S.D.N. then entered Ms. Brown's cell, pressed a handmade weapon against her, and raped her. After he was removed, she reported her rape to corrections staff and was taken to a local medical facility, where she underwent a Sexual Assault Forensic Examination and met with a victim advocate and law enforcement. She suffered severe and permanent injury as a result of the rape.

As the tower officer on duty, Ms. Noe was responsible for ensuring that male inmates could not enter the female housing unit, and she was terminated as a result of her actions or inactions that led to Ms. Brown's rape. Alternatively, John Doe I was present in the tower when S.D.N. was allowed to enter the female housing unit. John Doe II was Ms. Noe's supervisor and failed to ensure that she abided by WVDCR policies and training.

Defendant Superintendent Toby Allen is the Superintendent of SWRJ. Through that role, he was aware of long-standing "problems with staffing, training, and supervision at SWRJ." (Am. Compl. at ¶ 28.) The amended complaint references several lawsuits that alleged inmates suffered as a result of staff negligence: an inmate who committed suicide in 2011, an inmate who died of

---

1 Factual allegations are taken from the First Amended Complaint and accepted as true as required in analyzing a motion brought pursuant to Rule 12(b)(6).

an overdose in 2022, inmates who suffered medical complications or died as a result of SWRJ's failure to respond to their medical needs, and claims of broadly inhumane conditions asserted on behalf of a class.  WVDCR had approximately 1,000 staff vacancies statewide, resulting in understaffing by approximately 26% at the time of Ms. Brown's rape.  Superintendent Allen "failed to ensure that SWRJ implemented and complied with a PREA [Prison Rape Elimination Act] staffing plan that provided for adequate levels of staffing and monitoring."  (*Id.* at ¶ 48.)  He also failed to ensure personnel received training regarding prevention of sexual abuse and sexual harassment.  "Ms. Brown's rape…was the direct result of Superintendent Allen's failure to ensure that SWRJ was appropriately staffed, his failure to train personnel at SWRJ, and his failure to ensure that pretrial detainees and incarcerated persons at SWRJ were appropriately supervised." (*Id.* at ¶ 51.)  On the day of Ms. Brown's rape, Superintendent Allen and WVDCR were aware that the inadequate staffing and inadequate training were likely to result in harm to inmates like Ms. Brown, and were aware that personnel under their supervision and control were unable or unwilling to "ensure that persons like Ms. Brown were not subjected to sexual assault or rape." (*Id.* at ¶¶ 59, 62.)

WVDCR and SWRJ policies provided for segregation of inmates by sex.  The Plaintiff contends that permitting a man to enter the female housing unit demonstrates deliberate indifference to the risk of sexual assault and/or rape, and that the risk of rape or sexual assault because of the mixing of male and female individuals at SWRJ was reasonably foreseeable. Inadequate investigations into the background of personnel included a failure to "adequately assess the possible risk of harm or injury to third parties that could result from the conduct of their staff if male and female persons at SWRJ did not remain segregated."  (*Id.* at ¶ 94.)  WVDCR and

Superintendent Allen hired and retained personnel with a history of negligent acts and misconduct, including use of violence toward inmates as well as permitting inmate violence toward other inmates.   In addition, the Defendants' failure to adequately train and supervise staff permitted the negligence that led to Ms. Brown's rape.

The Plaintiff brings the following causes of action: Count I – Eighth Amendment and Fourteenth Amendment Violations Under 42 U.S.C. §1983; Count II – Violation of Article III, Section 5 of the W. Va. Constitution; Count III – State Law Negligence; Count IV – Negligent Hiring, as to Defendant WVDCR and Defendant Allen; Count V – Negligent Supervision and Training, as to Defendant WVDCR, Defendant Allen, and Defendant John Doe III; Count VI – Negligent Retention, as to Defendant WVDCR, Defendant Allen, and Defendant John Doe III, and Count VII – *Monell* Liability, as to Defendant WVDCR and Defendant Superintendent Allen.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading.  *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008).   Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).   "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)).   In other words, "a complaint must contain "more than labels and

4

conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.   Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements."  *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).   The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).   However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim.  *Iqbal,* 556 U.S. at 679.   Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments."  *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570).   In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570).   A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557).   "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be

5

a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

## DISCUSSION

### A.  Defendant Noe

Defendant Noe argues that any 42 U.S.C. § 1983 claims against her in her official capacity must be dismissed.[2]   She argues that she is entitled to qualified immunity because the Plaintiff has not alleged sufficient facts to establish that she violated Ms. Brown's Eighth or Fourteenth Amendment rights.   Defendant Noe argues that any claims under the Eighth Amendment are not viable because Ms. Brown was a pre-trial detainee, and the Eighth Amendment applies only after conviction.   She further argues that the Plaintiff's factual allegations do not state a Fourteenth Amendment claim because the facts pled do not "establish that Defendant Noe intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed" or that she "knew or should have known that her action or inaction posed an unjustifiably high risk of harm."   (Noe Mem. at 10.)   Next, she argues that Count II must be dismissed because Article III, Section 5 of the West Virginia Constitution does not provide a private cause of action for monetary relief.   Finally, she argues that she is entitled to qualified immunity as to state claims.

The Plaintiff argues that Ms. Noe is not entitled to either federal or state qualified immunity, citing precedent that failure to protect an inmate from harm, including sexual assault, by other inmates, constitutes violation of the inmate's constitutional rights.   She argues that Ms. Noe knew or should have known of the risk posed by permitting a male inmate into the female housing area.   She further contends that both the Eighth and Fourteenth Amendments are

---

[2]  The Plaintiff indicates that she did not intend to bring such claims, and the Court will not address this issue further.

applicable to her as a pretrial detainee, noting that pretrial detainees are afforded greater protection because no punishment at all is permitted prior to conviction.   Ms. Brown argues that Article III, Section 5 of the West Virginia Constitution does permit civil actions to remedy violations, including compensatory and punitive damages.

As an initial matter, the Court finds that the Plaintiff cannot state a claim for violation of the Eighth Amendment as a pretrial detainee.   *See, e.g.*, *Short v. Hartman*, 87 F.4th 593, 606 (4th Cir. 2023) (describing precedent regarding the standards applicable to claims for deliberate indifference under both the Eighth Amendment, for post-conviction inmates, and the Fourteenth Amendment, for pretrial detainees).   However, deliberate indifference cases under the Eighth Amendment remain relevant to the Fourteenth Amendment standard.   *Id.* at 608 ("It is true that if a Fourteenth Amendment claimant is entitled to at least as much protection as an Eighth Amendment claimant, then whatever treatment violates the Eighth violates the Fourteenth."). Count One asserts a claim pursuant to 42 U.S.C. § 1983 for violations of the Eighth and Fourteenth Amendments.   The Court finds that any standalone Eighth Amendment claim would be subject to dismissal, but the 42 U.S.C. § 1983 claim remains viable to the extent it asserts violation of the Fourteenth Amendment.

Qualified immunity is an affirmative defense intended to shield public officials from civil suits arising out of their performance of job-related duties.   *See, e.g., Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009).   Defendants asserting a qualified immunity defense first bear the burden of "demonstrating that the conduct of which the plaintiff complains falls within the scope of the defendant's duties."   *In re Allen*, 106 F.3d 582, 594 (4th Cir. 1997) (internal quotation marks omitted.)   The defense of qualified immunity is available unless the official "knew or reasonably

7

should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff...."  *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (internal emphases omitted).   A plaintiff must allege facts that "make out a violation of a constitutional right, and the right at issue must have been clearly established at the time of the defendant's alleged misconduct."  *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 97 (4th Cir. 2017).   Officials are protected even if they make reasonable mistakes of fact or law, so long as they do not violate a clearly established statutory or constitutional right.  *Pearson*, 555 U.S. at 231–32.  "A constitutional right is 'clearly established' when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013) (internal quotation marks and citations omitted).

Prison officials have "an affirmative obligation to take reasonable measures to guarantee the safety of inmates."  *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (internal punctuation omitted) (quoting *Whitley v. Albers*, 475 U.S. 312, 319–20 (1986)).   Eighth Amendment cases involving failure to protect inmates or inhumane conditions of confinement are generally analyzed under the two-prong deliberate indifference test: "the prisoner must be exposed to a substantial risk of harm, and the prison official must know of and disregard that substantial risk to the inmate's health or safety."  *Id.* at 98 (internal punctuation and quotation marks omitted). However, the Fourth Circuit recently held that the subjective second prong of this test is not applicable to Fourteenth Amendment claims.  *Short v. Hartman*, 87 F.4th 593, 609 (4th Cir. 2023).   In the Fourteenth Amendment context, wherein the subjective second prong is not applicable, plaintiffs need only demonstrate that the challenged action was objectively unreasonable, or that "the defendant should have known of that condition and that risk, and acted

8

accordingly." *Id.* at 611. Allegations of mere negligence remain insufficient to state a claim for a Fourteenth Amendment violation. *Id.* "[A] pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015).

The Supreme Court considered a case involving the rape of an inmate by another inmate in his cell in 1994. *Farmer v. Brennan*, 511 U.S. 825, 830 (1994). "For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834. In addition, the Supreme Court held that, in an Eighth Amendment deliberate indifference case challenging conditions of confinement, a plaintiff must show that the official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety," although that subjective component is not applicable in Fourteenth Amendment cases. *Id.* at 837. The inmate in *Farmer* was transgender and presented female characteristics, but had not expressed concern to prison officials about being housed in general population prior to the attack. *Id.* at 830-31. The Supreme Court found that the prison officials were not entitled to judgment as a matter of law, and the petitioner should have been permitted to engage in discovery to explore their knowledge of the risks. *Id.* at 849.

The Plaintiff has alleged that Defendant Noe violated policy by permitting a male inmate to enter the female housing unit. Although internal policies are not "clearly established law," violation of policy is a relevant consideration "both in determining the seriousness of the risk posed and in determining whether an officer knew of" the risk. *Short v. Hartman*, 87 F.4th 593, 613 (4th Cir. 2023). A fact-finder could infer that anyone in Ms. Noe's position would, or should,

9

recognize that the policy exists in part to protect female inmates and detainees from sexual violence at the hands of male inmates and detainees.   The Plaintiff's allegations here are sufficient to state a claim for deliberate indifference under either the Fourteenth Amendment or the Eighth Amendment standard.   The Plaintiff's allegations are also sufficient to defeat a qualified immunity defense.   The Court finds that exposing an inmate to the risk of violence, including sexual assault, by a fellow inmate is a clearly established constitutional violation.   Furthermore, as the Fourth Circuit explained, "qualified immunity is generally not available at all for deliberate indifference claims."   *Id*. at 615 (explaining that the showing required for a deliberate indifference claim under the Eighth Amendment is typically sufficient to defeat qualified immunity).   Thus, Defendant Noe's motion to dismiss as to Count I should be denied.

Defendant Noe also seeks to dismiss the Plaintiff's claim under Article III, Section 5 of the West Virginia Constitution.   The West Virginia Supreme Court held that "West Virginia does not recognize a private right of action for monetary damages for a violation of Article III, Section 6 of the West Virginia Constitution."[3]   Syl. Pt. 3, *Fields v. Mellinger*, 851 S.E.2d 789 (W. Va. 2020). The court extensively discussed the case relied upon by the Plaintiff, *Harrah v. Leverette*, 271 S.E.2d 322 (W. Va. 1980), which addressed remedies for violations of Article III, Section 5, and rejected the Plaintiff's reading.   *Fields*, 851 S.E.2d at 794-95.   The court concluded that "[t]here is simply no language in *Harrah* adopting an implied cause of action for a constitution violation" and that "the district courts that have concluded the *Harrah* court did not include a cause of action under the state constitution for money damages among the remedies it listed have properly

---

[3] Article III, Section 6 of the West Virginia Constitution prohibits unreasonable searches and seizures, while Article III, Section 5, as relevant herein, prohibits excessive bail, excessive fines, and cruel and unusual punishments.   W. Va. Const. art. III, §§ 5-6.

10

interpreted this case." *Id.* at 795 (internal quotation marks and citation omitted).    Courts within this district have concluded that the reasoning in *Fields* forecloses any cause of action for damages under Article III, Section 5 of the West Virginia Constitution.    *See, e.g.*, *Holley v. W. Virginia Div. of Corr. & Rehab.*, No. 2:23-CV-00652, 2024 WL 390085, at *6 (S. D. W. Va. Jan. 31, 2024) (Berger, J.); *Greene v. Ballard*, No. 2:17-CV-02897, 2021 WL 9828247, at *16 (S. D. W. Va. Aug. 5, 2021) (Tinsley, M.J.), *report and recommendation adopted as modified*, No. 2:17-CV-02897, 2022 WL 17486301 (S. D. W. Va. Dec. 7, 2022) (Copenhaver, S.J.); *Anderson v. Barkley*, No. 2:19-CV-00198, 2020 WL 7753290, at *2 (S. D. W. Va. Dec. 29, 2020) (Copenhaver, S.J.) ("Although *Fields* addressed Section 6, rather than Section 5, of Article III, several facets of the decision strongly suggest that its analysis applies with equal force to Section 5.").    Therefore, the Court finds that the motion to dismiss should be granted with respect to Count II.[4]

Finally, Ms. Noe argues that she is entitled to qualified immunity as to the state tort claims. "West Virginia applies two standards to determine if a state agency, agent, official, or employee is protected by qualified immunity."    *W. Virginia Dep't of Hum. Servs. v. David B., Next Friend of J.B.*, 911 S.E.2d 884, 893 (W. Va. 2024).    "The first test is based upon federal law, while the second is in addition to the federal law-based test."    *Id.* at 893-94.    Thus, a plaintiff who satisfies the federal standard to overcome a qualified immunity defense also satisfies the state standard.    In addition, "a litigant may pierce the shield of qualified immunity by showing that the government official's, employee's or agent's acts or omissions were fraudulent, malicious, or oppressive."    *Id*. at 893.

---

[4] The remaining Defendants also moved to dismiss as to Count II on similar grounds.    Because the analysis is the same as to all of the Defendants, the Court finds that Count II must be dismissed as to all Defendants and will not further address the individual arguments.

11

For the reasons discussed above, the Court finds that the Plaintiff has met her burden under the federal standard to defeat qualified immunity by pleading facts that, if proven, would demonstrate that Ms. Noe violated her clearly established right to be protected from unreasonable risk of harm, including violence at the hands of other inmates.   Ms. Noe allowed a male inmate to enter the female housing unit, and in doing so, knowingly exposed Ms. Brown to sexual abuse by that male inmate.   Therefore, the Court finds that Ms. Noe's motion to dismiss as to Count III should be denied.

### B.  Defendant Toby Allen

Defendant Allen argues that the Plaintiff has not alleged facts sufficient to establish that he had personal involvement in any constitutional violation.   He contends that the allegation that he was aware of staffing shortages is insufficient, given that there is no allegation that he took any action that caused the shortage.   Likewise, he contends that there is no allegation that he took any action in relation to the allegedly inadequate training and supervision.   He also contends that the Plaintiff's allegations are conclusory.   He argues that the amended complaint fails to set forth sufficient facts to state a supervisory liability claim because the previous lawsuits listed by the Plaintiff are unconnected to the facts of this case and do not establish that he was aware of an unreasonable risk of harm to the Plaintiff.   Defendant Allen next argues that he is entitled to qualified immunity because he did not violate Ms. Brown's right(s) and no such right was clearly established.   He notes that at the time of Ms. Brown's rape, "detainees asserting claims for deliberate indifference were required to prove both an objective and subjective component of deliberate indifference," and a reasonable officer at the time would not have understood that "he could potentially be held liable for deliberate indifference based upon events or circumstances of which he was not subjectively aware."   (Allen Mem. at 12.)   He contends that negligence claims

are barred by qualified immunity under West Virginia law.  He also argues that the Plaintiff's *Monell* claim in Count VII fails as a matter of law because he is an employee of a state agency, not a local government or municipality.

The Plaintiff points to her allegation that Superintendent Allen "knew of chronic staffing deficiencies, failed to enforce policies designed to prevent cross-gender access and sexual abuse, and knowingly disregarded systemic risks that culminated in Plaintiff's rape."  (Pl.'s Resp. to Allen Mot. at 1) (Document 49.)   She contends that the amended complaint adequately alleges that Defendant Allen's own actions and inactions created the conditions that resulted in her rape. She argues that "a supervisor may be held individually liable where his own decisions, omissions, or systemic failures plausibly demonstrate deliberate indifference to a known risk of constitutional harm."  (*Id.* at 6.)   She contends that he is not entitled to qualified immunity as to either the federal or state claims because she has sufficiently alleged violation of a clearly established constitutional right.   She argues that prior cases have established that failure to protect an inmate from sexual abuse by other inmates constitutes a violation of the inmate's constitutional rights. She does not address the *Monell* claim.

In addition to the legal standards for qualified immunity and deliberate indifference outlined above, Ms. Brown's claims against Superintendent Allen implicate supervisory liability. "[S]upervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates," with liability premised "on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care."  *Slakan v. Porter*, 737 F.2d

13

368, 372 (4th Cir. 1984).   The Fourth Circuit has established the following elements for

supervisory liability claims under 42 U.S.C. § 1983:

> (1) that the supervisor had actual or constructive knowledge that
> his subordinate was engaged in conduct that posed a pervasive and
> unreasonable risk of constitutional injury to citizens like the
> plaintiff; (2) that the supervisor's response to that knowledge was so
> inadequate as to show deliberate indifference to or tacit
> authorization of the alleged offensive practices,; and (3) that there
> was an affirmative causal link between the supervisor's inaction and
> the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).   While

isolated instances of misconduct are insufficient, "[a] supervisor's continued inaction in the face

of documented widespread abuses…provides an independent basis for finding he either was

deliberately indifferent or acquiesced in the constitutionally offensive conduct of his

subordinates."   *Slakan*, 737 F.2d at 373.

The Plaintiff has alleged that Superintendent Allen was aware of long-standing, severe

staffing shortages that had contributed to several prior instances of harm to inmates.[5]   She alleges

that the conditions of confinement were broadly inhumane in violation of the Eighth and

Fourteenth Amendments, and prison officials, including Mr. Allen, took no action to ensure that

conditions within SWRJ met constitutional minimums.   She also alleges that SWRJ did not have

a PREA plan that ensured adequate staffing and monitoring to prevent sexual assault and that

SWRJ did not provide staff with adequate training related to preventing inmate sexual abuse and

rape.   Based on policies regarding separation of male and female inmates, she alleges that he knew

of the risks posed, yet failed to ensure that staff were adequately trained and supervised to comply

---

[5] The amended complaint references several previous lawsuits.   Although allegations in a lawsuit may not be sufficient evidence at the summary judgment stage, the Court finds them sufficient to allege that those incidents occurred and the Defendants were aware of them.

14

with those policies.   In addition, she alleges that Defendants Allen and WVDCR hired individuals with a history of negligence, misconduct, violence toward inmates, and deliberate indifference, and permitted those personnel to continue their misconduct.

Ms. Brown was raped because a male inmate, armed with a homemade weapon that he should not have been able to obtain, entered the female housing unit, which he should not have been able to access, and raped her before staff finally intervened to remove him.   As previously found, an inmate's right to be protected from violence or the threat of violence posed by other inmates is clearly established, and Mr. Allen knew or should have known that conditions that would permit an armed male inmate to enter the female housing unit would expose Ms. Brown to the risk of sexual assault.   Despite knowledge that understaffing and poorly-trained staff had repeatedly resulted in harm to inmates, Superintendent Allen failed to correct those problems. Sufficient numbers of properly trained and supervised staff could have prevented S.D.N. from possessing a weapon, entering the female housing unit, or attacking Ms. Brown.   Thus, the Court finds that the Plaintiff has pled sufficient facts to state a claim as to Count I, and Defendant Allen has not demonstrated that he is entitled to qualified immunity.   The same analysis is applicable to Count III.[6]   Therefore, Defendant Allen's motion to dismiss as to Counts I and III should be denied.

To prevail on a negligent hiring or retention claim, the Plaintiff must establish that the employer failed "to conduct a reasonable investigation into the employee's background vis a vis

---

[6] The amended complaint includes allegations that all Defendants were individually negligent, grossly negligent, and displayed reckless disregard for Ms. Brown's rights, as well as an allegation that Superintendent Allen is vicariously liable for the acts and omissions of personnel under his supervision.   The Plaintiff's response to the motion to dismiss appears to disclaim any reliance on a theory of vicarious liability as to Defendant Allen, and she does not point to any precedent that would permit holding an individual supervisor vicariously liable for the wrongdoing of employees under his supervision.   Therefore, the Court has considered only whether the allegations suffice to state a claim against Defendant Allen for his own conduct.

15

the job ... and the possible risk of harm." *State ex rel. W. Virginia State Police v. Taylor*, 499 S.E.2d 283, 289 n.7 (W. Va. 1997); *see also McCormick v. W. Virginia Dept. of Pub. Safety*, 503 S.E.2d 502, 506 n.5 (W. Va. 1998). Otherwise stated, the question is: "should the employer have reasonably foreseen the risk caused by hiring or retaining an unfit person?" *Taylor*, 499 S.E.2d at 289 n. 7. When the prospective employee is seeking a role that involves potential use of force or otherwise poses a risk to third parties, the employer's duty is heightened. *Fields v. King*, 576 F. Supp. 3d 392, 406 (S.D.W. Va. 2021) (Johnston, C.J.).

Ms. Brown alleges that Superintendent Allen and the WVDCR routinely failed to investigate the background of staff, including the personnel on duty on the day of her assault. She alleges that such an investigation would have revealed a prior history of misconduct—consistent with a practice of hiring and retaining staff despite a history of misconduct. She alleges that widespread staffing shortages contributed to the retention of staff who were unfit for duty. If proven, these facts would support the conclusion that Superintendent Allen should have foreseen the risk of hiring and retaining unqualified staff with a history of exposing inmates to abuse and exhibiting deliberate indifference to the health and safety of inmates. The Court finds these allegations, together with permissible inferences drawn from the facts surrounding Ms. Brown's rape, sufficient at this stage to state a claim for negligent hiring and retention. Superintendent Allen's motion to dismiss will be denied as to Counts IV and VI.

"A claim for negligent supervision in West Virginia requires proof of the traditional elements of negligence – duty, breach, causation, and damages – supplemented by the additional necessity of demonstrating a tortious act or omission by the employee whose conduct forms the basis of the claim." Syl. Pt. 2, *Camden-Clark Mem'l Hosp. Corp. v. Marietta Area Healthcare,*

16

*Inc.*, 922 S.E.2d 324 (W. Va. 2025).   As the Court previously found, Ms. Brown has adequately alleged that Ms. Noe was deliberately indifferent and negligent in permitting a male inmate to enter the female housing unit, where he raped Ms. Brown.   She alleges a lack of training and supervision surrounding prevention of sexual abuse and other inmate violence, as well as lack of enforcement of the policy regarding separation of male and female inmates.   Superintendent Allen had a duty to ensure the safety of inmates, including through properly training and supervising correctional staff, and the Plaintiff has alleged sufficient facts that, if proven, would support a finding that the breach of that duty caused an inmate in his custody, deprived of other means of protecting herself, to be sexually assaulted by a male inmate.   Therefore, the Court finds that the motion to dismiss as to Count V should be denied.

The Court finds that any *Monell* claim against Mr. Allen in his individual capacity should be dismissed.   *Monell* permits suit under §1983 against municipalities for the unconstitutional actions of individual defendants when those actions reflect an official policy.   *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 694 (1978) ("it is when execution of a government's policy or custom…inflicts the injury that the government as an entity is responsible under § 1983."); *Owens v. Baltimore City State's Atty's Off.*, 767 F.3d 379, 402 (4th Cir. 2014) ("under *Monell,* a municipality is liable only for its *own* illegal acts…a municipality is liable under § 1983 if it follows a custom, policy, or practice by which local officials violate a plaintiff's constitutional rights").   *Monell* has no applicability to an individual supervisory employee sued in his individual capacity.   Therefore, the motion to dismiss Count VII as to Superintendent Allen should be granted.

17

### C.  WVDCR

The WVDCR moves to dismiss on the basis of sovereign immunity under the Eleventh Amendment.   In the alternative, it contends that, as a state agency, it is not subject to suit under 42 U.S.C. § 1983.   It further contends that it is entitled to qualified immunity for all state common law claims because those claims involved discretionary governmental functions and the Plaintiff has not shown a violation of a clearly established right.   Finally, it argues that *Monell* applies only to local governmental bodies, not to state agencies.

"It is well established that the Eleventh Amendment bars suit in federal court by an individual citizen against a sovereign state of the Union."  *Roach v. W. Virginia Reg'l Jail & Corr. Facility Auth.*, 74 F.3d 46, 48 (4th Cir. 1996) (finding that the Eleventh Amendment barred suit against the West Virginia Regional Jail Authority in federal court, but that the case should have been remanded to state court rather than dismissed).   "[S]tate sovereign immunity bars all claims by private citizens against state governments and their agencies, except where Congress has validly abrogated that immunity or the state has waived it."  *Biggs v. N. Carolina Dep't of Pub. Safety*, 953 F.3d 236, 241 (4th Cir. 2020) (quoting *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019)). "Congress has not abrogated sovereign immunity for § 1983 suits."  *Id.*   Sovereign immunity may not apply if a state waives its right to immunity, if Congress abrogates the states' immunity, or if the suit seeks prospective injunctive relief.  *Eplion v. Farmer*, No. 3:18-CV-00978, 2018 WL 4100781, at *4 (S. D. W. Va. Aug. 6, 2018) (Eifert, M.J.), *report and recommendation adopted*, No. CV 3:18-0978, 2018 WL 4102817 (S. D. W. Va. Aug. 27, 2018) (Chambers, J.).   The Plaintiff seeks monetary damages rather than injunctive relief, Congress has not abrogated Eleventh Amendment immunity for purposes of the federal claims, and the Plaintiff has not identified a state

18

waiver of immunity applicable to the state claims. Therefore, the Court finds that WVDCR's motion to dismiss should be granted.

### CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Defendant West Virginia Division of Corrections and Rehabilitation's Motion to Dismiss Plaintiff's Amended Complaint* (Document 42) be **GRANTED** and that Defendant West Virginia Division of Corrections and Rehabilitation be **DISMISSED** from this case.

The Court further **ORDERS** that the *Motion to Dismiss First Amended Complaint on Behalf of Defendant C.O. Noe* (Document 44) and *Defendant Toby Allen's Motion to Dismiss Plaintiff's Amended Complaint* (Document 46) be **GRANTED** as to Counts II and VII and **DENIED** as to all remaining counts.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:       June 22, 2026

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

19